**Melqueades Alanis SOSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00813–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 5, 1992.

Stanley C. Kirk, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Claire Connors, Denise Dryer, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, MIRABAL and DUNN, JJ.

## OPINION

DUNN, Justice.

Appellant was charged with, and found guilty by a jury of, the felony offense of possession of marijuana. The jury assessed punishment at a $50,000 fine and 20 years confinement. We affirm.

In his first three points of error, appellant contends that the trial court erred in overruling the objections and motions for mistrial he made after certain portions of the prosecutor's closing argument. We are to review the record as a whole to determine whether any erroneous statements were made, and if so, whether they were so prejudicial as to deprive appellant of a fair and impartial trial. *Miller v. State*, 741 S.W.2d 382, 392 (Tex.Crim. App.1987). We reverse only where statements were made to the jury that, either individually or collectively, are manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision such that the accused was denied a fair and impartial trial. *Id.*

Appellant complains of five specific portions of the argument. We will address each portion in turn.

That appellant and his co-defendant rehearsed their testimony and that appellant's counsel "came up with a story"

■ We note initially that one of appellant's trial attorneys spent a significant part of his closing argument attacking the credibility of the State's witnesses. This theme culminated with the following statements:

> APPELLANT'S COUNSEL # 1: Ladies and gentlemen, I want you to keep in mind that consistency equals truth, that admissions that hurt, equals truth. Think about the times that my client would say something. How about that blue Ford pickup truck. He could have said it was a Chevy. He could have said they weren't drinking beer much that day. Under tough cross-examination by the prosecutor did he quiver? No. He's telling the truth, ladies and gentlemen, and he is, that means he's not guilty. What about the State's witnesses? Every one of them was impeached. Every one of them changed their testimony. Every one of them have been shown to be wrong. Every one of them.

The following then occurred during the prosecutor's closing remarks:

> THE PROSECUTOR: Mr. Villagomez, do you remember when you testified in May of 1991? Do you remember when you were asked the question, "Did you know the people who you talked to at the Chevron station?" And he said, "No." Why did he lie to you? Why did he change his story? Because he's got to protect these guys. He's not going to say it's Sosa and Meza. He's got to protect them. These are the people who had close to 300 pounds on December 21st, 1990, of marihuana.
>
> What else do you know? What did Melqueades Sosa tell you? What did Gustavo Meza tell you? Basically the story was the same, wasn't it? They rehersed [sic] it very well.
>
> APELLANT'S COUNSEL # 1: Assuming facts not in evidence.
>
> . . . .

THE COURT: The jury has heard the evidence. The jury will use it's [sic] own recollection.

APPELLANT'S COUNSEL # 2: I'd also object, Your Honor. She's accusing counsel of coming up with a story. I would object to that type of comment.

THE COURT: That comment will be sustained. The jury's instructed not to consider it for any purpose whatsoever.

APPELLANT'S COUNSEL # 2: I would ask for a mistrial.

THE COURT: Overruled.

Jury argument which answers the argument of opposing counsel is appropriate. *Melton v. State*, 713 S.W.2d 107, 114 (Tex. Crim.App.1986). The prosecutor's argument that appellant and his co-defendant told the same story and had rehearsed it very well was responsive to the argument of appellant's counsel that appellant's consistency in his testimony was indicative of truth.

Furthermore, we do not agree that the prosecutor's comments amounted to "accusing counsel of coming up with a story." That accusation can certainly not be gleaned from the prosecutor's words themselves, and nor do we find the accusation implicit in her words. The use of the word "They" in her statement "They rehersed [sic] it very well" seems to clearly indicate appellant and his co-defendant, not any of the attorneys for the defendants. The accusation of "coming up with a story" was leveled at the defendants, not their attorneys.

We also note that the trial court instructed the jury not to consider the prosecutor's comments. The Court of Criminal Appeals has stated that:

> In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence this Court puts its faith in the jury's ability, upon instruction, consciously to recog-

nize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations.

*Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987) (citations omitted). Appellant has raised no argument as to why this "appellate presumption" should be considered effectively rebutted in this case.

That appellant is "a rich dope dealer"

The following also transpired during the prosecutor's closing argument:

> THE PROSECUTOR: Ladies and gentlemen, they were doing their job. And they did a good job. It's not TV where there's video cameras. They didn't even have enough police officers to maintain surveillance on Prudence Street the entire day. The dope dealers have more money than the police do. Just a simple fact.
>
> APPELLANT'S CO–DEFENDANT'S COUNSEL: Object to any speculation on her part about facts outside the record about the amount of money that's available for any type of investigation.
>
> APPELLANT'S COUNSEL # 2: Ask the jury to disregard that.
>
> THE PROSECUTOR: Officer Smith testified there was a manpower shortage at Pasadena and that's why there was no police officers.
>
> THE COURT: Sustain the objection to the prosecutor's last statement.
>
> APPELLANT'S COUNSEL # 2: Ask the jury to disregard it, Your Honor.
>
> THE COURT: Jury will be instructed to disregard it for any purpose.
>
> APPELLANT'S COUNSEL # 2: Move for mistrial.
>
> THE COURT: That's overruled.

■ Appellant now complains that the "prosecutions [sic] argument was … that he was a rich dope dealer were [sic] unsworn statements outside the record." This is not, however, the objection that was made at trial. The trial objection was that the prosecutor was "speculati[ng] … about facts outside the record about *the amount of money that's available for any type of investigation*" (emphasis added). A trial objection made on one legal basis may not be used to support a contention on

appeal made on a different legal basis. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim.App.1990). When the trial objection is different from the contention on appeal, the error, if any, is not preserved. *Id.* at 781.

We also reiterate the presumption set out by the Court of Criminal Appeals in *Gardner.* Appellant has provided us with no reason to consider it "rebutted" here.

The weight of the marijuana

■ Appellant also argues that "the prosecution misstated the weight of the marijuana that was found—stating it was approximately 300 pounds when it was only 245 pounds." The relevant portion of the prosecutor's closing argument is as follows:

> THE PROSECUTOR: He told you when the marijuana was weighed that was taken from Prudence Street it weighed approximately 300 pounds. He told you it was very wet.
>
> APPELLANT'S COUNSEL # 2: Misstatement. The actual weight is 245 pounds. It's a misstatement of the record. She's trying to inflame the jury to fit her argument on the punishment.
>
> ....
>
> THE COURT: Jury's heard the evidence, they'll use their own recollection concerning the evidence. Overrule the objection.

The record reflects that Officer Smith testified as follows:

> THE PROSECUTOR: Did you take the same steps and weigh the marijuana that was recovered there at the garage of 3706 Prudence?
>
> OFFICER SMITH: Yes, sir. I did.
>
> THE PROSECUTOR: And approximately what did that weigh, *including the suitcases?*
>
> OFFICER SMITH: Approximately 300 pounds.

(emphasis added). Officer Smith testified that the marijuana seized from the garage at 3706 Prudence was contained in four suitcases that he described as "brown leather-type suitcases just for travelling bags." The prosecutor's statement was not correct, in that the marijuana and the four suitcases that contained it weighed,

*together*, 300 pounds. There was testimony that the contents of the four suitcases, the marijuana itself, weighed 245 pounds, 15 ounces.

Nevertheless, counsel's statement about the exact weight of the marijuana was not so gross that we will presume it to be prejudicial to appellant, and appellant has erected no argument as to how the weight discrepancy harmed him. Considering the record as a whole, we determine beyond a reasonable doubt that any error made by the trial court in overruling the objection made no contribution to appellant's conviction or punishment. TEX.R.APP.P. 81(b)(2).

That drug dealers have lots of money

■ During her argument to the jury in the punishment phase of the trial, the prosecutor told the jury that "drug dealers have lots of money." There was testimony at trial that 700 pounds of marijuana would be worth approximately $17,500. There was also testimony that indicated that someone whose identity was unknown had already paid $14,300 for a portion of the marijuana seized in this case. Other evidence on the value of marijuana was also put before the jury. Under these circumstances, the prosecutor's argument that "drug dealers have lots of money" is a reasonable deduction from the evidence and is therefore appropriate. *See Melton*, 713 S.W.2d at 114.

That the prosecutor bolstered the officers' testimony

■ During her closing argument, the prosecutor made the following comments: Don't you know that these guys who have been in narcotics a while, don't you know they could have come up with a better story if that's what they were going to do?

Appellant now complains that this "bolstered the testimony of and vouched for the credibility of the State's police officers." However, we need not address this complaint. No objection to this argument was made at trial. Therefore, no error has been preserved for our review. TEX. R.CIV.P. 52(a). In any event, this argument was appropriate as a response to the argument of appellant's counsel attacking the credibility of the State's witnesses. *See Melton*, 713 S.W.2d at 114.

We overrule appellant's first three points of error.

■ In appellant's fourth point of error, he contends that the trial court erred in excluding the testimony of a "graphoanalyst" who was going to compare appellant's handwriting with the handwriting on papers seized from appellant at the time of his arrest. The decision whether to allow a witness to testify as an expert is within the sound discretion of the trial court. *Duckett v. State*, 797 S.W.2d 906, 910 (Tex.Crim. App.1990). The trial court's decision will not be disturbed on appeal absent a clear showing that it abused its discretion. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim.App.1990).

We are informed by the witness' own testimony that graphoanalysis is used to determine a person's "character traits" from his or her handwriting. For instance, again in the witness' words: "Teachers, if they're having problems with school children can analyze their writing and determine where the problems are." The witness, who is the mother of two of the three attorneys who tried this case for the two defendants, is an accountant.

■ Where a trial court is faced with an offer of expert testimony on a scientific topic unfamiliar to lay jurors, as here, the court's first task is to determine whether the testimony is sufficiently reliable to help the jury in reaching accurate results. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim. App.1992) (considering TEX.R.CRIM.EVID. 702). The proponent of novel scientific evidence, in order to prove that the evidence is reliable, must prove three criteria to the trial court outside the presence of the jury: (a) that the underlying scientific theory is valid; (b) that the technique applying the theory is valid; and (c) that the technique was properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573. The proponent's burden of persuasion is to show reliability by clear and convincing evidence. *Id.*

Factors affecting the trial court's determination as to reliability include: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert who is to testify; (3) the existence of literature supporting the underlying scientific theory or technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person who applied the technique on the occasion in question. *Id.*

Here, when asked what "scientific board or organization" recognizes graphoanalysis as a science, the witness answered with only one organization—the International Graphoanalysis Society. When asked if any government agencies recognize the use of graphoanalysis, the witness replied that "several" did. However, she also testified that she did not know any of their names.

The witness testified that she became certified in graphoanalysis through a course she took through the mail. She did not testify as to the existence of scientific literature supporting the theory or technique of graphoanalysis except to say that she brought no such literature with her to court.

The witness explained to the court than graphoanalysis is "used to determine character traits" and gave examples of how couples could use it in determining what their problems are and how teachers could use it to determine what their pupils' problems are. She testified that she had been a graphoanalyst for 15 years and had reviewed "thousands" of handwriting samples.

No evidence was adduced on the potential rate of error of the technique or the availability of other experts to test and evaluate the technique.

Considering the foregoing, we hold that the trial court did not abuse its discretion in refusing to permit the graphoanalysis witness to testify as an expert. Appellant did not meet his burden of proof to show reliability by clear and convincing evidence.

We overrule point of error four.

We affirm the judgment of the trial court.