Opinion issued July 22, 1999



In The

# Court of Appeals
### For The
# First District of Texas

---

## NO. 01-97-00716-CR

---

## ARTHUR BERRY BURTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 689238**

---

## OPINION

Following two mistrials occasioned by hung juries, a jury in the third trial

convicted appellant, Arthur Berry Burton, of capital murder. The court assessed

punishment at life imprisonment. Appellant raises forty numbered issues on appeal. We overrule all issues and affirm.

## FACTS

In the early morning hours of February 16, 1995, Javier and Hilda De Los Reyes, who were living adjacent to the Hallmark Air Conditioning Company, heard three gun shots. Several minutes after hearing the shots, Mrs. De Los Reyes saw a person "covered with a towel or rag" get out of a large, gold car and get into a second car, which was parked underneath a light in the Hallmark parking lot. The person then returned to the first car, and the first car drove away. Mr. De Los Reyes called the police.

Two officers arrived at the parking lot and found a car with a leg protruding from the car door. Inside the car, they found the body of the victim, whom they identified as David Bane. Bane's gun holster was open and empty.

Jacqueline Kelly Pearson ("Pearson"),[1] appellant's former girlfriend with whom appellant had lived prior to the murder, testified that sometime in mid-February, 1995, appellant arrived at her house in the middle of the night. According to Pearson, appellant told her he had shot a security guard. Appellant had a gun, which he left on Pearson's dresser.

---

[1] At the time of the offense Pearson's last name was Kelly.

Appellant's friend, Curtis Hill, testified that at some point in February 1995, appellant told Hill that he had shot somebody. Appellant also told Hill that he was with "Shannon" at the time of the shooting.[2] The day after appellant confessed to Hill, they were watching a news program about the shooting, and appellant told Hill, "[T]hat's what I was talking about."

Shannon Babineaux testified that he was with appellant the night of the shooting. He heard gunshots while he was waiting in the car by Hallmark. After appellant returned to where Babineaux was waiting, appellant said he had had to "bust" the victim. As they were driving away, appellant began talking about a pistol and told Babineaux he had to retrieve the gun from the security guard. Babineaux grabbed a towel from appellant's car to conceal his identity, ran to the victim's car, and took the gun.

David Johnson received a gun from Pearson. Johnson gave the gun to his brother Timmie Lane, who gave it to the police. The bullets taken from the victim's body matched bullets fired from the gun Lane had given the police.

The defendant denied committing the offense, saying he was at a party in New Waverly the night of February 15 and the early morning hours of February 16. Kanessah Hall and Tallas Harrison testified in support of the alibi, but the State

---

[2] Shannon Babineaux used a variety of names.

3

impeached Harrison with his prior statement that he was sure the party was February 14. The State's rebuttal witness, Gloria Jones testified that she saw appellant at a party in New Waverly on the evening of February 16, the night after the shooting.

## APPLICATION OF RULE 44.2
## OF THE TEXAS RULE OF APPELLATE PROCEDURE

Preliminarily, appellant states that he "expects" this Court to apply rule 81(b)(2) of the Former Texas Rules of Appellate Procedure and that to do otherwise would penalize appellant by holding his counsel "accountable for [counsel's] *trial-time failure to foresee that Rule 44.2* would be promulgated and *Rule 81(b)(2)* would be repealed." He also contends that rule 44.2(b), which applies to non-constitutional error, "is unconstitutionally retroactive, as well as violates our equal rights and due course of law, without [sic] violating our separation of powers."

In *Fowler v. State*, No. 0075-98, slip op. at 5 (Tex. Crim. App., Mar. 31, 1999), the Court of Criminal Appeals held that Fowler did not suffer injustice as a result of application of rule 44.2(b), the rule in effect at the time of the disposition of Fowler's appeal, even though the Tenth Court of Appeals conceded that it would have reversed had it applied former rule 81(b)(2). The Court of Criminal Appeals observed, "Appellant . . . received that to which he was entitled. Appellant was entitled to nothing more than an appellate review of his conviction." *Fowler*, slip op. at 4. The

4

court also held that "the Tenth Court's application of Rule 44.2 did not violate the Texas Constitution's prohibition of retroactive laws." *Id.* at 8.

Similarly, appellant in the instant case is entitled to nothing more than appellate review of his conviction. Moreover, unlike the Tenth Court, on those few issues in this appeal where we find error, we cannot say that we would have reversed had we applied the former rules.

We overrule appellant's "unnumbered issue."

## PRIOR MISTRIAL TRANSCRIPTS

In issues one through three, appellant contends that on three occasions, the trial court erroneously denied his request for transcripts from his second mistrial: twice prior to trial and once immediately prior to submission of the charge to the jury, when he sought the transcript for inclusion in his bill of exceptions for purposes of appeal.

Appellant's first trial ended in a hung jury on April 23, 1996. On May 1, 1996, he requested a set of transcripts from this trial, and the court granted his request on May 22, 1996. On September 9, 1996, appellant's second trial ended in a hung jury. Attorney Jim L. Peacock represented appellant in both of these trials.

On January 16, 1997, Attorney Peacock requested the transcripts of six witnesses from the second trial: Shannon "Bailey," Arthur Berry Burton, Jacqueline Pearson, Kanessah Hall, Tiffany Hall, and Curtis Hall. Referring to the court's

previous finding that appellant was indigent, appellant requested that the costs of these transcripts be charged to the State.

The record reflects that Attorney Charles Freeman appeared as retained counsel as of March 14, 1997. Appellant did not reurge the request for free transcripts until sometime in May 1997, representing that the transcripts were necessary for impeachment. He alleged indigence, but did not provide facts or an affidavit in support of the allegation.

The motion was not heard until May 20, 1997, three weeks prior to the June 9 trial date. Referring to appellant's having made a $70,000 bond, having retained counsel, and being employed, the court found that appellant was not indigent and denied the request. After the State indicated that it had approval to obtain transcripts of appellant's testimony and that of co-actor Shannon Babineaux, the court provided that the defense could have copies of that testimony for the cost of copying. The court also observed that it had presided at both trials and did not think that there had been discrepancies of any importance between the testimony of the State's witnesses at the first and second trials. Otherwise, the court stated it would have ordered a free transcript. The court reiterated that the defense could receive a fair trial without the "primarily duplicitous testimony from the second trial," but that it did need appellant's and Babineaux's testimony.

Counsel represented that he had talked with Attorney Peacock and the investigator about the testimony of Jacqueline Pearson and Curtis Hill and believed that their testimony in the second trial differed from that in the first. The sole example related to Pearson's testimony about a letter.

The court observed that there had not been discrepancies of any importance. If Pearson were to deny she had said something at the second trial, counsel could then have the reporter read the statement to the jury. Counsel then requested a thirty-day continuance. The court denied the request, but reiterated its direction to the reporter to locate Pearson's testimony immediately after jury selection. Just prior to submission of the charge to the jury, appellant asked the court for a "transcript of the testimony from the second trial" for purposes of appeal. The trial court overruled the request.

As a matter of constitutional equal protection, an indigent criminal defendant is entitled to a free transcript of prior proceedings when that transcript is needed for an effective defense or appeal. *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 433 (1971) (citing *Griffin v. Illinois*, 351 U.S. 12, 19, 76 S. Ct. 585, 591, 100 (1956)); *Armour v. State*, 606 S.W.2d 891, 893, 894 (Tex. Crim. App. [panel] 1980). "It is settled that an indigent defendant is entitled upon timely request to be furnished without cost, *for use at a subsequent trial*, a transcription of the earlier mistrial testimony of the State's witnesses." *Richardson v. State*, 666 S.W.2d 336, 338 Tex.

App.—Houston [1st Dist.] 1984, no pet. ) (citing *Holden v. State*, 641 S.W.2d 919 (Tex. Crim. App. 1982) and *Billie v. State*, 605 S.W.2d 558 (Tex. Crim. App. 1980) (as modified on State's motion for rehearing)).

In the context of discussing an indigent's right to transcripts for purposes of appeal, the Fourteenth Court has stated that "[t]he trial court has complete discretion in its determination of indigency." *Tafarroji v. State*, 818 S.W.2d 921, 923 (Tex. App.—Houston [14th Dist.] 1991, no pet.). A defendant seeking transcripts of a prior mistrial must do so in a timely manner and pursue the request with due diligence. *See Billie*, 605 S.W.2d at 561-62. A court will presume an indigent defendant's need for transcripts of the State's testimony from a former mistrial, and the State has burden of showing lack of need when it desires to oppose a defendant's motion for transcripts. *Armour*, 606 S.W.2d at 894. In determining whether the State has met its burden, the court will consider whether the State has shown that the transcript would not have been of value to the defendant and whether there was an adequate alternative to providing the transcript. *See id.*

We conclude that appellant did not diligently pursue his request for transcripts. Attorney Peacock filed the first motion for transcripts on January 16, 1997, over four months after the second mistrial. No affidavit of indigence accompanied the motion. Appellant only represented, "Defendant has previously proven to the Court that he is indigent and therefore cannot afford such expense." The question, however, was

8

whether appellant was indigent at the time of the request, not at the time of his prior trial. *Cf. Abdnor v. State*, 712 S.W.2d 136, 142 (Tex. Crim. App. 1986) (when transcripts requested for appeal, issue is financial status at time of appeal, not time of trial).

Attorney Freeman had assumed representation by March 14, 1997, but did not file another request for transcripts until May 1997. No affidavit of indigence accompanied the motion. No facts supporting the claim of indigence appeared in the motion. Counsel only represented that appellant was indigent.

Granted, the delay in appellant's case was not so great as that in *Holden v. State,* 641 S.W.2d 919, 920 (Tex. Crim. App. 1982), where the defendant waited over a year and did not file his motion until the first day of trial. *See also Tafarroji*, 818 S.W.2d at 923 (no diligence when request for transcripts for purposes of appeal filed over a year after filing of notice of appeal). Appellant's case, however, is also distinguishable from one in which an appellant files his request within weeks after the mistrial and repeatedly attempts to obtain a ruling on the motion. *See, e.g., Armour*, 606 S.W.2d at 891-92 (appellant filed motion fifteen days after mistrial, presented it to presiding judge the same day, and several times thereafter spoke to judge about the motion). We conclude that appellant was not diligent in asserting his indigence.

Even if appellant had been diligent, the alternative the court provided appellant was adequate. "Relevant factors in the determination of need for a free transcript are

9

the value of the transcript of the former trial in connection with the trial or appeal for which it is sought, and the availability of alternative devices that would fulfill the same function as the transcript." *Santos v. State*, 681 S.W.2d 208, 211 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd).

Here, the court confirmed that appellant had transcripts of the first mistrial. The court also assured that appellant had transcripts of his own testimony and that of the co-actor from the second mistrial. Had the court ascertained that there had been discrepancies of any importance between the testimony of the State's witnesses at the first and second trials, the court would have ordered a free transcript. Counsel at the third trial apparently had access to the counsel and investigator for the first two trials, and when he noted a potential discrepancy in Pearson's testimony, the court ordered the reporter to read the testimony to counsel immediately after jury selection. This case does not present a situation where appellant had to rely on access to a court reporter during the course of the retrial. *Cf. Britt*, 404 U.S. 2 at 229, 92 S. Ct. at 434 (citing *Wilson v. McMann*, 408 F.2d 896, 897 (2d Cir. 1969), in which such an alternative was found inadequate). Unlike the defendant in *Armour*, 606 S.W.2d at 894, appellant was not forced to locate impeaching testimony at the end of each day's proceedings during the retrial.

Instead, given all of the resources available to appellant, his case compares more than favorably to the situation in *Britt*. In *Britt*, 404 U.S. at 229, 92 S. Ct. at

434-35, the Supreme Court held that the defendant had an adequate alternative where the same court reporter reported at both the mistrial and the trial at issue; was a good friend of all the attorneys; and, at any time upon request, would have read back to counsel his notes of the mistrial well in advance of the second trial.

We also decline to find that the court erred in denying appellant's motion for transcripts from the second trial for purposes of appeal. Given appellant's possession of transcripts of the first trial and transcripts of his own and the co-actor's testimony from the second trial, appellant's apparent access to the attorney and investigator from the first two trials, counsel's ability to draw the trial court's attention to potential discrepancies between testimony at the first and second trials, counsel's ability to request limited portions of the transcript from the second trial, and inclusion of the complete transcript of the trial that is the basis of this appeal, we conclude that the transcript of the second trial would have been of limited value.

We overrule appellant's issues one through three.

## RECUSAL

In issue four, appellant complains that Judge Hatten should have recused trial Judge Krocker. In issue 23, appellant complains that Judge Krocker should have ruled on his second motion to recuse.

11

By motion dated and filed June 10, 1997, appellant moved that the trial judge recuse herself. Appellant's counsel stated:

> I . . . discovered that this Honorable Court in the person of Jan Krocker refused to accept a plea bargain for a state jail felony agreed upon by the State and Shannon Babineaux. Thus, this Honorable Court is a witness as to impeachment of Babineaux as well as not in a position to rule on admissibility of such impeachment. Therefore, we move to both recuse Judge Krocker and to continue this case for 30 days.

The court referred the matter to an administrative judge, who assigned Judge William Hatten to hear the motion. Counsel's theory at this hearing appears to have been the following. Details of Babineaux's plea agreement had been introduced at appellant's second trial. Subsequent to that trial, Judge Krocker refused to accept the agreement. Therefore, regardless of whether Babineaux testified at the third trial, Judge Krocker would have to be a witness on the matter of why the agreement had not been accepted. She would also have to rule on the admissibility of the impeaching evidence. For these reasons, counsel argued, Judge Krocker should not preside.

Judge Hatten denied the Motion for Recusal without explanation; and, on June 18, 1997, during trial, appellant filed a second motion for recusal. He alleged that Judge Krocker was "intimately involved in, and a witness to, disposition of" four other enumerated cases of Babineaux's. At the motion hearing, when the court inquired whether this was the same subject matter as that of the first motion, counsel

12

responded that it was "a little different, though." Later in the hearing, counsel admitted that the motion was untimely, but contended that it fell within an exception for matters that arise after the pretrial deadline for recusal motions.

Counsel explained that, given the State's questioning of Babineaux at the instant trial, counsel needed to "cross-examine and confront" the judge "on why it is that Shannigan [sic] Babineaux's felony murder indictment was in fact – you allowed it to be reduced and amended." The court responded that the court had nothing to do with the State's reducing the charge against Babineaux.

Although counsel viewed this motion as different and more specific than the prior motion, the court viewed it as the same. The court found the motion to be untimely and also "a frivolous motion since it ha[d] already been ruled on by Judge Hatten." The court, therefore, declined to take any action on the motion.

On appeal, appellant contends that recusal was appropriate because Judge Krocker was the only witness who could testify 1) about why, four days after appellant's second mistrial, she had approved the State's motion to amend the indictment against Babineaux from felony murder to a jail felony offense of theft, and 2) about why she had approved agreements to reset disposition of a motion to revoke Babineaux's probation until after appellant's third trial. He also suggests that, because she had presided over a proceeding in which potentially impeaching

statements were made, she ought not be the one to rule on the subsequent admissibility of those statements.

Rule 18a of the Texas Rules of Civil Procedure governs recusal in criminal cases. *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). This court reviews a judge's denial of a motion to recuse under an abuse of discretion standard. *Bruno v. State*, 916 S.W.2d 4, 6 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).[3] Under that standard, even if the lower court gives the wrong reason for its decision, the appellate court will sustain the decision if the decision is correct on any theory of law which finds support in the record. *Bee v. State*, 974 S.W.2d 184, 190 (Tex. App.—San Antonio 1998, no pet.) (discussing standard in context of review of evidentiary rulings). Regardless of whether the appellate court would have reached a different result, it should not reverse so long as the trial court's ruling was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380-81 (Tex. Crim. App. 1990) (opinion on reh'g) (discussing standard in context of review of evidentiary rulings).

---

[3] The State does not contend that the first motion was untimely. *See Stafford v. State*, 948 S.W.2d 921, 925 n.6 (Tex. App.—Texarkana 1997, pet. ref'd) (ten-day requirement of rule 18a is not absolute and does not contemplate situation in which party cannot know basis of the recusal until after motion for recusal is no longer timely).

14

A reasonable view of the record supports Judge Hatten's decision not to recuse Judge Krocker. Although Judge Krocker might be the only witness regarding why she took certain actions in Babineaux's case, appellant does not explain, and we do not see, why Judge Krocker's motivation would be relevant to Babineaux's credibility. Irrelevant evidence is inadmissible. Tex. R. EVID. 402.

The fact that Judge Krocker presided in proceedings involving Babineaux similarly does not warrant recusal. A judge's involvement in prior proceedings involving the defendant in and of itself does not justify recusal. *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992). Judge Krocker's involvement in the co-actor's case here certainly does not.

We overrule issue four.

We also agree with the court that appellant's second motion for recusal was untimely and was the same motion Judge Hatten had previously overruled. Although rule 18a requires a hearing on a motion to recuse, such a requirement does not apply unless the recusal motion states valid grounds for recusal. *Cf. Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 855-56 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (no error to refuse hearing on motion to disqualify retired judge's certification to sit on any case where such challenge may be made only in a quo warranto proceeding).

We therefore overrule appellant's issue 23.

15

## COURT'S EXPLANATION OF FELONY MURDER DURING VOIR DIRE

In issue five, appellant contends that the trial court misstated the law when it explained felony murder to the prospective jurors during voir dire. He further contends that the purported misstatement deprived him of his peremptory challenges. The basis of appellant's complaint lies in the court's use of "accidental" in the following passage:

> There is a special law in Texas concerning felony murder which basically says that if a person intends to commit a certain felony, for example, robbery, or burglary, whatever it may be, and a death results, for example, a gun goes off accidentally, it wouldn't be a murder, a real homicide, as you normally think of a homicide, because there was no intent to kill someone. But if death resulted because of the action of the perpetrator of the crime in committing another felony, there are some exceptions as to that felony, then that would be a crime called felony murder.

The penal code provides in relevant part that a person commits the offense commonly referred to as "felony murder" if that person "commits or attempts to commit a felony . . . and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02 (Vernon 1994).

The court's hypothetical example involved (1) a person committing a felony, (2) using a firearm, (3) committing an action during the felony that resulted in death. Although the court's hypothetical referred to an "accidental" discharge of a gun, that

16

statement was intended as an exception to the concept being explained. The hypothetical clearly tied the perpetrator's action in committing a felony to the resultant death. Use of a gun during a robbery in a manner that resulted in death would constitute a clearly dangerous act. *Ross v. State*, 861 S.W.2d 870, 876 (Tex. Crim. App. 1993) (opinion on reh'g) (stating that, if manner in which weapon was used amounted to an act clearly dangerous to human life, resulting homicide constitutes the offense of felony-murder as defined by section 19.02(a)(3) of the Texas Penal Code). The court's hypothetical was a correct statement of the law.

We overrule issue five.

## WITNESS'S PARTIAL EXEMPTION FROM RULE 613

In issue six, appellant contends that the trial court violated rule 613 of the former Texas Rules of Criminal Evidence when it permitted the victim's father, Clyde Bane, to remain in the court room. In issue seven, appellant contends that the trial court further violated article 38.05 of the Texas Code of Criminal Procedure when, in the presence of the jury, the court told Bane that the rule did not apply to him.

On June 11, 1997, before the jurors entered and the witnesses were sworn, appellant objected to the State's request that Bane be permitted to remain in the courtroom during the trial. Appellant objected to Bane's presence in the courtroom, not to Bane's testimony. Appellant has not established harm from Bane's presence in the courtroom. Even if the court erred in permitting Bane to remain, that factor

17

alone would not constitute reversible error. *Choice v. State*, 883 S.W.2d 325, 327 (Tex. App.—Tyler 1994, no pet.) (stating that violation of sequestration rule by a witness is not itself reversible error, but becomes reversible error only when the questioned testimony is admitted and complaining party harmed).

The only purpose of Bane's testimony was to identify a photograph of the victim. None of the witnesses Bane heard would have influenced that testimony. *See Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (purpose of sequestration rule is to prevent one witness from influencing another). Any violation of the sequestration rule did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b).

We overrule issue six.

We also conclude that the court's one sentence explanation singling out Bane and stating that he could stay in the courtroom was not a comment on the weight of the evidence in violation of article 38.05 of the Code of Criminal Procedure. Appellant does not explain, and we do not see, how the court's comment constituted a comment on the weight of the evidence or was a remark calculated to convey the court's opinion of the case to the jury.

We overrule issue seven.

## EVIDENTIARY ISSUES

In issues eight through 22 and 24 through 32, appellant addresses the trial court's admission and exclusion of evidence. We review these issues under the standard applied to discretionary decisions. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991) (trial court has broad discretion in determining admissibility of evidence, and appellate court will not reverse unless clear abuse of discretion is shown).

**Vehicle Identification.**

In issue eight appellant objects that testimony by Hilda De Los Reyes identifying photographs of a vehicle was inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). "A 'statement' is (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." TEX. R. EVID. 801(a).[4]

The State asked De Los Reyes about her perceptions of the similarities between objects (the vehicle and the photos), not about what she told someone about her perceptions. The testimony was not hearsay.

---

[4] Rules 801(a) and (d) of the Texas Rules of Evidence are substantively identical to former rules 801(a) and (d) of the Texas Rules of Criminal Evidence.

19

We overrule issue eight.

**Prior Inconsistent Statements.**

Appellant raises several issues relating to the State's introduction of prior inconsistent statements for impeachment purposes. These issues concern claims of inadequate foundation and claims of improper rulings related to limiting instructions.

### Claims of inadequate foundation.

In issues 10 and 31, respectively, appellant complains that the State did not establish the proper time, place, and person predicate for introducing the prior inconsistent statements of David Johnson and Tallas Harrison. We disagree.

Appellant contends that the State did not inform Johnson of the person to whom the prior statement was made when the State sought to impeach Johnson with his testimony at an earlier hearing on April 15, 1996. The April 15th "hearing" referred to the appellant's first trial. Thus, the question implicitly informed the witness that the statement was made to the judge, the jury, and the parties at that hearing. The form of the question avoided the risk of informing the present jury that appellant had been tried previously.

The purpose of the foundation requirements for the impeachment rule is to put the witness on notice as to which statements are going to be used to impeach his or her credibility. *Cf. Joseph v. State*, 960 S.W.2d 363, 366 (Tex. App.—Houston [1st

20

Dist.] 1998, pet. ref'd ) (referring to time and place foundation requirements). The question fulfilled that purpose.

We overrule issue 10.

In issue 31, appellant contends that the State never asked Harrison about when Harrison had made a prior statement about the date of a party (the event appellant was relying on for his alibi). Appellant also contends that the State's question was improper because the State did not ask Harrison whether he previously said he "remembered" the date of the party, but instead asked whether Harrison had previously said he was "sure" of the date.

At one point in the State's cross-examination of Harrison, the prosecutor referred to a discussion between Harrison, Bob Reece (the investigator), and herself. After the court sustained appellant's objection that the State had not confronted Harrison with the time, place, and person to whom Harrison made the statement, the prosecutor adequately confronted Harrison with the time of the statement (about two weeks ago during the only occasion on which she had met with Harrison), with the place of the statement (the Harris County Jail), and with the persons to whom it was made (the prosecutor and Reece). The prosecutor provided Harrison with an opportunity to explain or deny the statement.

We overrule issue 31.

**Claims relating to limiting instructions.**

Issues nine, 11, 16, 17, 30, and 32 concern the court's denial of appellant's requests for instructions limiting the use of impeachment evidence. When evidence has limited admissibility and a party requests an instruction to that effect, the court should give the limiting instruction at the time the evidence is admitted. *Rankin v. State*, 974 S.W.2d 707, 711-13 (Tex. Crim. App. 1996) (op. on reh'g).

In issue nine, appellant claims that the trial incorrectly denied his request for a limiting instruction after appellant's impeachment of State's witness Hilda De Los Reyes. The court denied the request without explanation.

We do not decide whether the testimony appellant elicited from De Los Reyes on cross-examination was, in fact, inconsistent with her prior direct testimony. Even if the testimony was inconsistent, appellant was not entitled to a limiting instruction. *Nethery v. State*, 692 S.W.2d 686, 705 (Tex. Crim. App. 1985) (reasoning that rule requiring limiting instruction when State impeaches own witnesses does not apply when defendant impeaches State's witness); *Jones v. State*, 810 S.W.2d 824, 828 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (same).

We overrule issue nine.

In issue 11, appellant complains that the court denied his request for an instruction limiting David Lee Johnson's prior statement indicating when appellant's girlfriend, Jacqueline Pearson ("Jasmine"), had given Johnson the gun used in the

shooting. At trial, Johnson testified that Jacqueline had given him the gun three days after Johnson had returned home from a stay in the hospital. In the prior statement, Johnson had stated that he had not seen Pearson for about a week after returning home from the hospital. It appears that the purpose of Johnson's testimony about the gun was primarily to show how it got from Pearson (who had received it from appellant) to Timmie Lane, Johnson's brother, from whom the police had retrieved the gun. Whether Johnson received the gun three days or a week after his return had no bearing on appellant's guilt or innocence.

The jury could have used the prior statement only for impeachment. No limiting instruction was required. *Cantrell v. State*, 731 S.W.2d 84, 95 (Tex. Crim. App. 1987).

We overrule issue 11.

In issues 16 and 17, appellant contends that the court should have given instructions limiting the use of Curtis Hill's statements about how long Hill had appellant's car before Hill allowed the car to be towed. By appellant's own description, he elicited or introduced all of the statements for which he contends there should have been limiting instructions. Under these circumstances, we conclude that appellant was not entitled to a limiting instruction. *Nethery,* 692 S.W.2d at 705; *Jones*, 801 S.W.2d at 828.

We overrule issues 16 and 17.

23

In issues 30 and 32, appellant contends that the trial court improperly denied his requests for an instruction limiting the use of Harrison's prior statements to Investigator Reece concerning the date of the party appellant was relying on for an alibi. At trial, Harrison testified that he had been with appellant in Willis and then at a party in New Waverly the evening and night of February 15 (the night of the murder). According to Harrison, he and appellant left the party around 3:00 or 4:00 a.m. and then went back to Willis. Harrison's trial testimony corroborated appellant's alibi. The State's rebuttal witness, Gloria Jones, however, placed appellant in New Waverly on the evening of February 16.

As discussed above, the State cross-examined Harrison regarding a prior statement to the prosecutor and Investigator Reece, in which Harrison said he remembered that he was with appellant on February 14, because it was Valentine's Day. In rebuttal the State called Reece, and Reece testified that Harrison had said the party was on February 14.

Even were we to conclude that the court erred in not giving a contemporaneous instruction, that error was harmless. Unless the jury concluded there had been more than one party, the jury could not have believed both Jones's testimony and Harrison's prior statement. Given the facts surrounding Jones's ability to pinpoint the date, it is more likely that the jury believed Jones. Finally, the jury heard

24

testimony about appellant's incriminating statements to Pearson, Babineaux, and Hall. Absence of a contemporaneous limiting instruction did not harm appellant.

We overrule issues 30 and 32.

**Purported Comment on Accused's Silence.**

Issue 12 involves the trial court's handling of appellant's objection to Officer Brown's testimony that he "[a]ttempted an interview with Mr. Burton." Appellant contends that this testimony constituted an impermissible reference to appellant's invocation of his right to silence. Although his argument does not directly address the matter, appellant frames the issue in terms of the trial court's refusal to rule on appellant's objection until after the prosecutor could continue questioning Brown.

The State urges that, read in context, Brown's original comment "could only be reasonably interpreted to mean that he attempted to interview appellant to obtain consent to search his car, and that appellant voluntarily agreed." We agree. *Hicks v. State*, 837 S.W.2d 686, 692 (Tex. App.—Houston [1st Dist.] 1992, no pet.)

We overrule issue 12.

**Attempted Impeachment with Misdemeanors**

In issues 13 and 15, appellant contends that the court abused its discretion in not permitting him to impeach two of the State's witnesses with evidence of their prior misdemeanor convictions. Issue 13 concerns the attempted impeachment of David Lee Johnson; issue 15, the attempted impeachment of Curtis Hill.

25

On its face, rule 609(a) is limited to impeachment with felonies or crimes involving moral turpitude. There is, however, an exception to rule 609(a), which "applies when a witness makes statements concerning his past conduct that suggest he has never been arrested, charged, or convicted of any offense." *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). Appellate courts have narrowly restricted this exception to rule 609(a) to situations where a witness makes an unambiguous claim of never having been arrested or convicted before. *See Delk*, 855 S.W.2d at 704-705; *Lewis v. State*, 933 S.W.2d 172, 177-79 (Tex. App.—Corpus Christi 1996, pet. ref'd).

The testimony appellant cites to support his attempted impeachment of Johnson and Hill does not meet this rigid standard. The cited passages from Johnson's testimony concern only Johnson's temporary possession of the gun used in the instant offense and Johnson's statements during the course of the investigation of the instant offense. They do not refer to "past" behavior. They did not imply that Johnson had never committed a crime.

The cited passages from Hill's testimony concern only Hill's reason for not asking appellant any questions, Hill's reason for not contacting the police, and Hill's cooperation with the police when they questioned Hill about the instant offense. They do not refer to "past" behavior. They did not imply that Hill had never committed a crime.

26

The cited passages did not open the door to impeachment with misdemeanor convictions. *Lewis*, 933 S.W.2d at 178-79 (defendant's declarations did not open the door to impeachment with misdemeanor convictions when declarations neither invoked the past nor implied that appellant never committed a crime). The trial court did not abuse its discretion in excluding the evidence.

We overrule issues 13 and 15.

**Refreshment of Recollection**

In issues 14 and 20, appellant contends that the trial court committed reversible error by permitting two State witnesses, Curtis Hill and Shannon Babineaux, to read their out-of-court statements to the jury. The record does not support appellant's contention.

After Hill testified that he could not remember appellant's telling Hill when the shooting had occurred, the prosecutor showed Hill his prior written statement and asked him whether he recognized it. Hill recognized the statement and read it to himself.

Hill did not read his statement out loud. The State did not offer Hill's statement into evidence. The State's use of the statement to permit Hill to refresh his present recollection of what he had previously told the police was proper. *Wood v. State*, 511 S.W. 2d 37, 43 (Tex. Crim. App. 1974) (describing permissible use of memorandum for purposes of refreshing recollection).

27

We overrule issue 14.

Appellant does not cite this Court to any portion of the reporter's record where the prosecutor asked Babineaux to read his out-of-court written statements, either to himself or to the jury. He cites only passages in which Babineaux testified that the first time the officer did not ask him about "no gun or nothing," and that, in the second statement, Babineaux "[s]aid something about the gun."

Nevertheless, appellant contends that Babineaux's responses to the prosecutor's questions about differences between his two out of-court-statements constituted a reading of his statements. Appellant cites no law and develops no argument in support of this contention. See TEX. R. APP. P. 38.1(h) (arguments must be supported by citations to authority); *Mosley v. State,* 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (contention rejected as inadequately briefed where appellant made no argument in support).

We overrule issue 20.

## Hill's "Ostentatious Act"

In issue 18, appellant contends that the trial court committed reversible error when it denied his request to instruct the jury to disregard Curtis Hill's "ostentatious act." The "act" apparently occurred when appellant was cross-examining Hill about the dates he "hung out" with Babineaux, and appellant objected to Hill's answer as

28

being non-responsive. Appellant then objected to "the witness's face," and the court admonished Hill not to make any facial expression.

Appellant continued with his objection to the non-responsiveness of Hill's answer; and, in the course of that objection, objected to the court's comments in the course of ruling on his objection. Appellant did not request an instruction to disregard until immediately after the lunch break, which had followed the court's ruling on appellant's objections.

The only descriptions of the "ostentatious act" are those provided by appellant's counsel, when he stated, "[m]y specific objection is to the witness' [sic] ostentatious sign, and the act — there was a physical act that he made when I asked the very last question . . . ." and when counsel reiterated, "the act — this ostentatious sign, act, and shaking of his head to the question."[5] The only case appellant provides in support of his argument, *McFarland v. State*, 834 S.W.2d 481 (Tex. App.—Corpus Christi 1992, no pet.), concerns a prosecutor's specifically described overt actions, for which the court gave an instruction to disregard.[6] It is inapposite.

We overrule issue 18.

---

[5] On appeal, appellant represents the description as follows: "Hill's ostentatious sig[hi]n[g], act, and shaking of his head."

[6] The additional cases appellant cited in his original brief also concerned only a prosecutor's inappropriate actions.

## Evidence Hill Never a Suspect

Appellant frames issue 19 in terms of whether the trial court erred in overruling appellant's rule 403 objection to Officer Swaim's testimony that Curtis Hill was never a suspect in the case. Appellant, however, does not develop his rule 403 argument in this court. *See Mosley,* 983 S.W.2d at 256 (contention rejected as inadequately briefed where appellant made no argument in support); *see also Matthews,* 892 S.W.2d at 209 (inadequate argument where contention not explained).

Instead, appellant argues that Swaim's testimony constituted a comment on Hill's credibility. If appellant is indeed making the latter argument, he has not preserved it, because rule 403 does not support exclusion of evidence on the grounds of improper bolstering. *Cohn v. State,* 849 S.W.2d 817, 820 (Tex. Crim. App. 1993) (emphasizing that rule 403 does not mandate exclusion of relevant evidence simply because it corroborates testimony of an earlier witness).

We overrule issue 19.

## Babineaux's Charges and Convictions

In issue 21, appellant contends that the court erred in overruling his objection to Babineaux's testimony about the "facts of his prior conviction(s)." Appellant directs this Court to cases holding that the State may not inquire into the facts of an accused's prior convictions. The State, however, did not inquire into the underlying

30

facts of the conviction, but only into the charges Babineaux had faced and the disposition of those charges.

We overrule issue 21.

## Attempted Cross-examination about Babineaux's Not Having Testified at Appellant's First Trial

In issue 22, appellant contends that the trial court erred in not permitting appellant to cross-examine Babineaux about his not having testified in appellant's first trial. The sole case appellant cites in support of his contention is *Sanders v. State*, 52 Tex. Crim. 156, 105 S.W. 803 (1907), which concerned impeachment of a defendant by reference to his not having testified at a former trial. Appellant does not develop an argument from this case, but presents this Court only with a question. *See Mosley*, 983 S.W.2d at 256 (contention rejected as inadequately briefed where appellant made no argument in support); *see also Matthews*, 892 S.W.2d at 209 (inadequate argument where contention not explained).

The State responds by pointing to Judge Onion's subsequent description of *Sanders* as "stand[ing] alone." *Franklin v. State*, 606 S.W.2d 818, 853 n.3 (Tex. Crim. App. 1979) (op. on reh'g) (Onion, J., concurring). *But see Raffel v. United States*, 271 U.S. 494, 496, 46 S. Ct. 566, 567 (1926) (citing *Sanders* and holding that it was not error to require defendant, who offered self as witness at second trial, to disclose that he had not testified in own behalf at first trial).

31

Regardless of the admissibility of Babineaux's prior silence, we cannot conclude that its relevance or probative value was such as to warrant reversal, particularly in light of the evidence the jury heard regarding the disposition of Babineaux's charges. Appellant explained to the trial court that "[w]hat he wanted to get into is [Babineaux] didn't testify because there was not an offer made to him at the first proceeding." Although the court precluded questions about Babineaux's silence, the court permitted appellant to "go into the fact that . . . whatever happened, you can go into that concerning the punishment on crimes pending." Appellant thoroughly questioned Babineaux about the disposition of the charges deriving from his involvement in the instant case and other cases.

We overrule issue 22.

**Jacqueline Pearson's Medical Records**

In issues 24, 25, and 26, appellant contends that the trial court erred in excluding portions of defense exhibits that contained Jacqueline Pearson's medical records. The document that is the subject of issue 24 is a single page "screening form" dated February 9, 1995, five days before the murder.

To the extent that appellant discusses the screening form, he argues only that the form was relevant. He does not address the State's hearsay objection. He does not explain why both the form itself and the contents of the screening form were not hearsay. He does not point to any exceptions that would render both the form and its

contents admissible. *Kirchner v. State*, 739 S.W.2d 85, 87 (Tex. App.—San Antonio 1987, no pet.) (stating that, when ruling of trial court concerned whether evidence was admissible under hearsay exception, it was incumbent on defendant to provide appellate court with argument and authority supporting same allegation of error).

We overrule issue 24.

The document that is the subject of issue 25 consists of four pages of "Progress Notes," covering May 8, June 3, and June 18, 1997, a period immediately prior to, and during, appellant's trial. The document was part of Defendant's Exhibit 3, which contained medical records from May and June, 1997. The State objected to Exhibit 3, in part on the ground that portions of the exhibit were not relevant and in part on the ground that portions of the exhibit were highly prejudicial.

The court sustained the State's objection in part, but did admit the bulk of Exhibit 3 with redactions. The redacted portions concerned details of Pearson's suicide attempt and her statement that she had unprotected sex in order to contract AIDS.

Issues of relevance are left to the trial court's discretion, and we will not reverse absent an abuse of that discretion. *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996). Similarly, we review a trial court's balancing of probative value and prejudice for abuse of discretion, looking for whether the trial court's determination

33

was a reasonable view of all the relevant facts. *Santellan v. State*, 939 S.W. 2d 155, 169 (Tex. Crim. App. 1997). We will not reverse unless the trial court's ruling was outside the zone of reasonable disagreement. *Ford,* 919 S.W.2d at 115; *Montgomery,* 810 S.W.2d at 391.

We cannot say that the trial court abused its discretion in ruling on the admissibility of the medical records. In considering the documents that are the subject of issue 25, the trial court reviewed each of the portions to which the State objected and listened to the arguments of both parties. The court considered the relevance of each portion and, where necessary, weighed the probative value of the evidence against its potential for prejudice. The trial court's ruling was not outside the zone of reasonable disagreement.

We overrule issue 25.

The record that is the subject of issue 26 dealt with a period commencing two weeks after Pearson had completed her statements to the police and ending long before appellant's trials. Appellant contends on appeal that the document was "essential for the jury to evaluate [Pearson's] credibility, especially regarding her cooperation in the investigation of this cause." However, when the trial court asked appellant for his response to the State's argument that the record was not relevant, appellant had no response. The court sustained the State's objection.

"In order to succeed, appellant must show that the Trial Court clearly abused its discretion in excluding the testimony." *Breeding v. State*, 809 S.W.2d 661, 663 (Tex. App.—Amarillo 1991, pet. ref'd) (citing *Johnson v. State*, 698 S.W.2d 154, 160 (Tex. Crim. App. 1985)). He has not done so here.

We overrule issue 26.

**Excluded Testimony from Medical Expert**

In issue 27, appellant contends that the trial court erred when it sustained the State's objection to a question posed to his medical expert. The question was whether certain disorders, "linked together, can affect one's psychological ability to perceive the here and now?" The State objected on the ground of relevance. The medical record about which appellant was questioning the expert, was the medical record from June 1997, the time of the trial, not the time of the perceptions about which Pearson was testifying. The trial court's ruling was not outside the zone of reasonable disagreement. *Ford,* 919 S.W.2d at 115; *Montgomery,* 810 S.W.2d at 39.

We overrule issue 27.

**Pearson's Letter**

In issue 28, appellant contends that the trial court erred when it sustained the State's hearsay objection to a letter ostensibly written by Pearson to appellant. In the letter, Pearson referred to a paper someone else had shown her and then stated, "All

I could see was my baby getting lethal. But I know you didn't do it." Appellant contends that the letter qualified under the hearsay exception for statements against interest. TEX. R. EVID. 803(24).

The admissibility of an out-of-court statement under the exceptions to the general rule against hearsay is within the trial court's discretion. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995). "All hearsay exceptions require a showing of trustworthiness." *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986).

We do not decide whether Pearson's statement qualified as one against interest, because we conclude that it was not sufficiently trustworthy to warrant admission. As part of his offer of proof, appellant provided Pearson's testimony from appellant's second trial, where Pearson testified that she put the statement in the letter because she "wanted somebody else to believe he didn't do it." When the State asked her who she had in mind, Pearson replied, "Whoever was reading [appellant's] mail." She testified she loved appellant at the time she wrote the letter. We cannot say the trial court abused its discretion in sustaining the State's objection.

We overrule issue 28.

## Jones's Testimony about her Daughter-in-Law

In issue 29, appellant contends that the trial court erred in overruling his hearsay objection to Gloria Jones's testimony about the date on which her daughter-in-law had taken an overdose of sleeping pills. The State called Jones to rebut Harrison's testimony that appellant had been with him at a party in New Waverly the evening of February 15 and into the morning of February 16, 1995.

Jones testified that, on the evening of February 16, 1995, she had seen appellant at a domino party in New Waverly at the apartment of Jennifer Spelling, who lived across the hall from Jones. When the State asked Jones whether there was anything during that week that had caused her to remember this specific date, Jones replied, "It was the week that my daughter-in-law took all my pills that Sunday --." Appellant objected that the statement was being offered for its truth and constituted hearsay. Only after a series of questions and answers concerning the date the daughter-in-law took the pills and the date she had been transferred to Hermann hospital, did appellant request a voir dire "[t]o establish the level of her personal knowledge on any of this." The court then admonished the State to include in its questions whether Jones was answering from her personal knowledge.[7]

---

[7] Appellant subsequently established that Jones had not been with her daughter-in-law when she took the pills or when she was transported to Hermann Hospital.

Jones testified that she had visited her daughter-in-law at Hermann Hospital on February 16, and left for New Waverly around 4:00 or 5:00 p.m. That was the last time she saw her daughter-in-law. The daughter-in-law died on February 19.

Appellant did not object, nor did he have a valid hearsay objection, to Jones's testimony about her last visit to see her daughter-in-law on February 16. Given the latter testimony, even if the trial court erroneously denied appellant's objection to Jones's testimony about other dates during the week of the party, the error did not affect substantial rights. *See* TEX. R. APP. P. 44.2(b). *Cf. King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (substantial right is affected when error had substantial and injurious effect or influence in determining jury's verdict).

We overrule issue 29.

## LIMITING INSTRUCTION IN THE FINAL CHARGE

In issues 33 and 34, appellant contends that the trial court erred when, in its final charge to the jury, it included an instruction limiting the use of witnesses' criminal histories to impeachment. The charge, as given, read:

> You are further instructed that any evidence that any witness has been convicted in any case or cases, was admitted [before] you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the witness and the weight to be given his testimony, and you will not consider the same for any other purpose.

Appellant had requested that the court limit the charge to defense witness Tallas Harrison. As in the court below, appellant reasons that, because the State did

not request a limiting instruction at the time the criminal histories of its witnesses were introduced, it was not entitled to such an instruction in the charge.

Appellant's reasoning in issue 33 implicitly derives from case law holding that, absent objection and a timely request for a limiting instruction, a party may not complain about the lack of such an instruction on appeal. Such a holding is not the equivalent of, and does not necessarily lead to, a conclusion that, absent a request for a contemporaneous limiting instruction, the trial court errs in including such an instruction in the charge.

In issue 34, appellant suggests that the limiting instruction constituted an impermissible comment on the evidence in violation of rule 38.05 of the Texas Code of Criminal Procedure. Apart from citing rule 38.05 in the caption, appellant cites no authority in support of this issue and does no more than incorporate his argument from issue 33. *Mosley*, 983 S.W.2d at 256 (rejecting contention as inadequately briefed where appellant made no argument in support); *Matthews*, 892 S.W.2d at 209 (finding argument inadequate and overruling point of error where contention not explained). Finally, even if the instruction constituted error, appellant was not harmed. The criminal histories — as distinguished from Babineaux's involvement in the instant offense — did not have any bearing on appellant's guilt or innocence. They were relevant only to impeachment of the witness, which more often inured to appellant's benefit rather than to the State's. They had no substantive use.

We overrule issues 33 and 34.

## DENIAL OF INSTRUCTION ON FELONY MURDER

In issue 35, appellant contends that the trial court erred in denying his request for a lesser included instruction on felony murder. In *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993), the court explained that the appropriate test to determine whether a defendant is entitled to a charge on a lesser included offense is the following:

> first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

*Id.* at 672-73 (emphasis in original).

Felony murder is a lesser included offense of capital murder. *Id.* at 673. The only question in this case is whether there was evidence that would permit the jury rationally to find that appellant had the intent to rob Bane, but not to cause his death. *Id.*

Appellant points to statements that would support the claim that he intended to rob Bane, for example a phrase that purportedly meant he was " *'trying to hurt* somebody, make some money,'" and a statement that "'he *needed some money* or something.'" He also refers to the position of Bane's body after the shooting. We fail to see how a jury could find from this evidence a lack of intent to cause death. The

40

evidence here is far from indicating that there was a struggle and the gun just "went off." *Cf. Butler v. State*, 981 S.W.2d 849, 858 (Tex. App.—Houston [1st Dist.] 1998, pet. filed).

We overrule issue 35.

## CLOSING ARGUMENTS

In issues 36 through 39, appellant contends that the trial court erred in its ruling on objections during his and the State's closing argument. With regard to those issues where we agree, we cannot conclude appellant was harmed.

There are four permissible areas for jury argument: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *See Cifuentes v. State*, 983 S.W.2d 891, 895 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

In issue 36, appellant contends that the trial court deprived him of his "'sacred right'" to attack De Los Reyes's credibility when it sustained the State's objection to appellant's representation that, in her prior statement De Los Reyes had said, "I went to look and see if I — the vehicle, but it went by too fast, and I didn't see it." During her testimony De Los Reyes admitted that she had previously testified, "'I went to look at it, but it passed by too fast.'"

Had appellant argued that De Los Reyes had not seen the car, we would agree that such argument was a reasonable deduction from the evidence. Appellant's

41

representation to which the State objected, however, concerned what De Los Reyes had said; and that representation was a misstatement of the evidence. The trial court did not err in sustaining the State's objection.

Issues 37 through 39 concern the State's closing argument. Appellant complains that the State's arguments about what Babineaux and Pearson told the police went beyond the evidence. Appellant complains that the prosecutor impermissibly bolstered the credibility of Pearson, Hill, and Babineaux.

In arguing to the jury, counsel may draw from the facts in evidence all inferences that are reasonable, fair, and legitimate, and will be afforded great latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith. *Adams v. State*, 813 S.W.2d 698, 700 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (citing *Griffin v. State*, 554 S.W.2d 688, 690 (Tex. Crim. App. 1977)). To determine the propriety of a prosecutor's argument, we consider the entire argument, not just isolated statements. *Mosley v. State*, 686 S.W.2d 180, 183 (Tex. Crim. App. 1985). Although misstatements by the prosecutor are not constitutional in nature, they can affect a defendant's substantial rights. *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd).

Appellant complains that the argument that Babineaux told the police that he was involved and went with appellant was outside the record. The jury, however, had heard evidence that Babineaux made two statements to the police. They also heard

42

Babineaux's testimony about what had happened on the night of the shooting, including his riding around with appellant and Babineaux's involvement in retrieving the victim's gun. To argue that Babineaux included these matters in his statement to the police was a reasonable inference.

We overrule issue 37.

Appellant also complains about the State's argument that Pearson told the police about the gun. Pearson, however, had testified, "I told [David] that the gun that he took from my house, that I told the police about it, and they are going to be coming to get it and that was it." The State's argument did not refer to evidence outside the record.

We overrule issue 38.

Finally, appellant complains that the State improperly commented on the credibility of its witnesses when the prosecutor argued, "The one thing [appellant] didn't count on, is that when asked, [Pearson, Hill, and Babineaux] were going to tell the truth to police."

The argument was responsive to appellant's attack on the witnesses' credibility and was a reasonable inference from the evidence before the jury. *See Castillo v. State,* 939 S.W.2d 754, 761 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (statements that witness credible permissible when a reasonable inference from

evidence); *Sosa v. State*, 841 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (jury argument that answers argument of opposing counsel is appropriate).

We overrule issue 39.

## RESPONSE TO JURY QUESTION

In issue 40, appellant contends that the trial court erred by denying his request for an oral response to the jury's question about the meaning of "specifically" in the charge. The question read:

> As used in the 7th paragraph originating on page 3 of the charge, does "specifically intended to cause the death of David Garmany Bane" require a different level of culpability than "intentionally caused the death of David Garmany Bane" as that phrase is used in the 6th paragraph originating on page 3 of the charge, and if so what level of culpability?

The court responded, "The word 'specifically' has no legal meaning. The level of culpability is the same for both paragraphs." When the court asked the defense whether it had any objections to the response, the defendant stated that it did not. The court then indicated that it was "just going to send in a written response," and appellant objected, requesting that the court give the instruction orally in open court. Appellant now contends that the court failed to comply with article 36.27 of the Code of Criminal Procedure and that he was harmed because the response misstated the law.

44

The trial court violated article 36.27 when it denied appellant's request to respond orally in open court. *Reidweg v. State*, 981 S.W.2d 399, 402 (Tex. App.—San Antonio 1998, no pet.) (op. on reh'g). Appellant, however, has not demonstrated that he was harmed by the instruction. *See id.* at 403 (citing *McGowan v. State*, 664 S.W.2d 335, 358-59 (Tex. Crim. App. 1984), and implicitly placing burden on appellant to show harm). Because appellant did not object to the contents of the response, he has waived any objection to the content of the response. *See McGowan*, 664 S.W.2d at 358 (failure to specify grounds for objection to answer waives error). Additionally, on appeal, he does not explain his contention that the response "was an *in*correct statement of hornbook law that altered Appellant's culpability to the State's benefit and his detriment."

We cannot conclude that the failure to instruct orally "had a substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271.

We overrule issue 40.

We affirm the judgment of the trial court.

*Adele Hedges*
Adele Hedges
Justice

Panel consists of Justices Hedges, Andell, and Duggan.[8]

Do not publish. TEX. R. APP. P. 47.

---

[8] Justice Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.